Harry MELMAN, d/b/a Harry Melman Co., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Illinois Central Railroad Company, Intervening-Defendant.

Civ. No. 5–1466.

United States District Court
S. D. Iowa,
Central Division.

July 13, 1964.

504

Leonard A. Jaskiewicz, J. William Cain, Jr., Ronald N. Cobert, Washington, D. C., and Homer E. Bradshaw, Des Moines, Iowa, for plaintiff.

William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Attorney, Department of Justice, Washington, D. C., and Donald A. Wine, U. S. Atty., Des Moines, Iowa, for United States of America.

Robert W. Ginnane, General Counsel, and Francis A. Silver, Associate General Counsel, I.C.C., Washington, D. C., for the Interstate Commerce Commission.

Before VAN OOSTERHOUT, Circuit Judge, STEPHENSON, Chief Judge, and HANSON, District Judge.

STEPHENSON, Chief Judge.

This action was instituted against the United States of America and the Interstate Commerce Commission (hereinafter referred to as the Commission) under the provisions of Sections 1336, 1398, 2284, and 2321–2325, Title 28 U.S.C.A.; Sections 17(9) and 205(g) of the Interstate Commerce Act (49 U.S.C.A. §§ 17 (9) and 305(g); Section 10 of the Administrative Procedure Act (5 U.S.C.A. § 1009), to set aside a decision and order of the Commission dated June 19, 1961 denying plaintiff's application pursuant to the "grandfather" provisions of Section 7 of the Transportation Act of 1958 [1] (72 Stat. 573). Leave was granted Illinois Central Railroad Company to intervene as a defendant pursuant to Title 28 U.S.C.A. § 2323.[2] The question presented is whether the action of the Commission was proper under the law and the facts before the Commission.

1. As here applicable Section 7(c) provides:
"Subject to the provisions of section 210 of the Interstate Commerce Act, if any person * * * was in bona fide operation on May 1, 1958, over any route or routes or within any territory, in the transportation of property for compensation by motor vehicle made subject to the provisions of part II of that Act by paragraph (a) of this section, in interstate or foreign commerce, and has so operated since that time * * * except * * * as to interruptions of service over which such applicant * * * had no control, the Interstate Commerce Commission shall without further proceedings issue a certificate or permit, as the type of operation may warrant, authorizing such operations * * * if application is made to the said Commission as provided in part II * * * and within one hundred twenty days after the date on which this section takes effect [August 12, 1958]."

2. However, intervenor did not file separate pleadings, or briefs or take part in the arguments.

On December 8, 1958, plaintiff filed application with the Commission for a certificate of public convenience and necessity authorizing operation in interstate commerce, as a common carrier by motor vehicle, over irregular routes, of bananas, from New Orleans, La., to points in 31 states. Hearing was held on December 2, 1960 before a hearing examiner. On March 15, 1961, the hearing examiner filed his report and recommended order, in which he found plaintiff had failed to establish the right to a certificate of public convenience and necessity under the statute and recommended denial of the application. In substance the examiner held that plaintiff had failed to establish that "bona fide operations conducted by applicant on May 1, 1958 have been engaged in by him continuously since that date except as to an interruption over which applicant had no control." Exceptions to this report and recommended order were filed by plaintiff. On June 19, 1961, the Commission, Division 1, filed its decision and order finding "that the exceptions filed herein are without merit; and that the statement of facts, the conclusions and the findings of the examiner, being proper and correct in all material respects, should be, and they are hereby, affirmed and adopted as our own." The application was denied effective August 31, 1961.

On April 30, 1962 plaintiff filed a petition with the Commission requesting that it waive the requirements of Rule 1.101 (e) of the Commission's General Rules of Practice, so as to permit late filing of a petition for further hearing or for reconsideration. On July 30, 1962 the Commission, Division 1, acting as an Appellate Division, ordered that the petition for Waiver of Rule 1.101(e) be denied for the reasons "(1) that the decision of Division 1 of June 19, 1961, which affirmed the recommended order of the hearing examiner, is supported by the evidence, and, insofar, as reconsideration is concerned, is administratively final and is not subject to appellate review and (2) that the evidence applicant offers to introduce at a further hearing, if proven, would not require a change in the decision already made. Such denial makes action unnecessary with respect to the tendered petition."

Prior to the passage of the Transportation Act of 1958, motor vehicles used in carrying property consisting of agricultural commodities were exempt from the certificate and permit requirements by virtue of the exemption contained in section 203(b) (6) of the Act (49 U.S.C. § 303(b) (6)). The Transportation Act of 1958 amended the exemption section and made more specific the provisions concerning the "exempt" or "nonexempt" status of many commodities. Bananas was one of 11 commodities, the transportation of which prior to the 1958 Act was exempt but which, under the terms of the 1958 Act, was made subject to the certificate and permit requirements of part II of the Interstate Commerce Act. However, Section 7 of the 1958 Act provided for "grandfather" authority for any person filing an application within the authorized period who was engaged in bona fide operations for which authority is sought, on May 1, 1958, and continuously since that date, except for interruptions in service beyond its control. (See footnote 1.)

The issue now before us is, did the Commission err in holding that plaintiff failed to establish that operations conducted by plaintiff on May 1, 1958 have been engaged in by him continuously since that date except as to an interruption over which applicant had no control. The record before the Commission indicates that plaintiff commenced the transportation of bananas from New Orleans to points in various states in the spring of 1956 and was so engaged on the critical date under the Statute, May 1, 1958. However, thereafter, and before the hearing before the examiner for the Commission, plaintiff had two interruptions in service. The first commenced on January 15, 1959 and continued to December 1, 1959. During this 10½ month's period plaintiff did not operate because he lost his equipment due to financial difficulties. On December 1, 1959 plaintiff entered into an arrangement with Time Distributors, Inc. of

New Orleans, under which banana traffic again began to move from New Orleans in plaintiff's name, through trip-leases arranged with other owners. This operation ceased on February 19, 1960 and plaintiff was unable to resume operations under a similar leasing plan until about 4 months later. At the time of the hearing, December 2, 1960, plaintiff was operating under a leasing plan with Robert B. Bland of New Orleans. The Commission held the first interruption in service due to financial difficulty was within the control of plaintiff, and therefore denied the application. Plaintiff contends the action of the Commission was arbitrary, an abuse of its administrative discretion, and contrary to the evidence of record.

■ Whether plaintiff has engaged in bona fide operations continuously since the "grandfather" date (May 1, 1958) except for interruptions in service beyond his control, is a question of fact to be determined by the Commission. In United States v. Maher, 307 U.S. 148, 153–154, 59 S.Ct. 768, 771, 83 L.Ed. 1162, the Supreme Court in discussing Section 206(a) of the Motor Carrier Act of 1935 (49 Stat. 543) after which the present act is patterned, stated:

" * * * But under 206(a) the Commission must issue 'such certificate without requiring further proof that public convenience and necessity will be served' by an applicant who 'was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time'. By this legislation Congress responded to the felt need for regulating interstate motor transportation through familiar administrative devices, while at the same time it satisfied the dictates of fairness by affording sanction for enterprises theretofore established. *Whether an applicant seeking exemption had in fact been in operation within the immunizing period of the statute was bound to raise controverted matters of fact. Their determination Congress entrusted to the Commission.*" (Emphasis supplied.)

■ Congress having entrusted to the Commission the power to determine the issues of fact presented herein, the scope of review by this Court is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless there has been a departure from the law or abuse of the Commission's discretion we are without authority to intervene. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1945); Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308 (1912); Ace Lines Inc. v. United States, 197 F.Supp. 591, 599 (S.D.Iowa 1960); Kroblin Refrigerated Xpress, Inc. v. United States, 197 F.Supp. 39, 47 (N.D.Iowa 1961).

■■ The finding by the Commission that plaintiff's first interruption in service for a period of over ten months (Jan. 15 to Dec. 1, 1959) due to financial difficulties was within the control of plaintiff is not without precedent. In Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 80, 62 S.Ct. 932, 86 L.Ed. 1283 (1941) the Supreme Court held that the Commission was warranted in holding as a matter of law that the interruption because of bankruptcy was not one over which the applicant had no control within the meaning of the Motor Carrier Act. We consider this case determinative of the issues now before the Court and find that the action of the Commission in denying the application is supported by the record herein. The fact that the interruption in service commenced 8½ months subsequent to the "grandfather" date (May 1, 1958) does not alter the situation. Under the statute the absence of interruption of service required, continued to the date of the hearing. Gregg Cartage & Storage Co. v. United States, supra, 316 U.S. 83–84, 62 S.Ct. 932. There is no showing of arbitrary delay on the part of the Commission in passing on the application.

Finally, plaintiff contends the Commission erred in denying his petition for further hearing to offer evidence not adduced at the initial hearing. The granting of a petition for rehearing or further hearing is a matter falling within the discretion of the Commission and the Commission's determination with regard thereto will not be disturbed except on a clear showing of abuse of discretion. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420; United States v. Pierce Auto Freight Lines, supra, 327 U.S. 535, 66 S.Ct. 687. No such abuse of discretion has been established.

We conclude that the findings and orders of the Commission are supported by substantial evidence and in compliance with the law. Neither is there shown abuse of discretion on the part of the Commission.

This memorandum opinion shall constitute the court's findings of fact and conclusions of law, as provided by Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A.

Judgment will be entered by the Clerk of this Court dismissing plaintiff's petition at plaintiff's costs in accordance with Rule 58, Federal Rules of Civil Procedure.